M. JACOBY & COMPANY (LIMITED), Appellant, *v.* GEORGE D. PAYSON
and Another, as Executors, etc., of ELISHA J. DENISON, Deceased,
Respondents.

*Principal and agent — agent's power to indorse a check in the principal's name —
good faith of the indorsee.*

An agent, entitled to collect moneys on behalf of his principal, has no authority
to make an indorsement, in the name of his principal, upon negotiable paper,
which imposes any liability upon his principal.

Where a person received a check, drawn to the order of another and indorsed in
such other's name by his agent, for the purpose partially of paying the agent's
debt to such indorsee, it is notice to him that the agent, in paying his individual
debt with such check, is not acting in his master's business nor within the scope
of his authority, and, as a matter of law, such person does not receive the check
in good faith.

APPEAL by the plaintiff, M. Jacoby & Company (Limited), from
a judgment of the Supreme Court in favor of the defendants, entered
in the office of the clerk of the county of New York on the 2d day
of July, 1894, upon the verdict of a jury rendered after a trial at
the New York Circuit dismissing the plaintiff's complaint upon the
merits, and also from an order entered in said clerk's office on the
25th day of June, 1894, denying the plaintiff's motion for a new
trial made upon the minutes.

This action was brought to recover damages for the alleged con-
version of the following check:

"No. 230.            NEW YORK, *November 20th*, 1890.

"BANK OF AMERICA.

"Pay to the order of M. Jacoby & Co. forty-six hundred and
thirty-nine $\frac{27}{100}$ dollars.

"THE H. B. CLAFLIN COMPANY,

"$4,639.27.                    By D. N. FORCE."

Indorsed: "M. Jacoby & Co., E. J. Denison."

Stamped on face: "8.    21 Nov., 1890."

Stamped on left-hand margin: "C.  The Bank of America.
Certified.   Payable only through N. Y. Clearing House."

The plaintiff is a foreign corporation existing under the laws of
the United Kingdom of Great Britain and Ireland, and having its

chief place of business at Nottingham, England, and is engaged in the manufacture and sale of lace curtains. August 1, 1888, the plaintiff and H. L. Fesler & Co. of New York entered into a contract by which the latter were appointed for three years the plaintiff's sole agents in the United States and Canada for the sale of the goods manufactured by the corporation. The contract contains, among others, the following provisions :

"Messrs. M. Jacoby & Co. will not pay any commission for goods sold by them to the following houses. * * *" (Wight & Co. is not one of the excepted firms.) "Excepting the above-named firms, a commission of five per cent on the net amount of all sales made in sterling on our goods to be paid by Messrs. M. Jacoby & Co. to Messrs. H. L. Fesler & Co. * * * A monthly statement to be rendered by Messrs. M. Jacoby & Co. of all sales and a fly-sheet copy of each invoice to be sent to Messrs. H. L. Fesler & Co."

By a subsequent contract, extending the one originally made, it was provided : " Messrs. Fesler & Co. to advance the freight, duty and other incidental expenses, adding same to the sterling prices, which they will so calculate to return Messrs. M. Jacoby & Co., Limited, the net amount in sterling, sending a/c sales showing the transactions in detail.

" Remittances to be made by Messrs. Fesler & Co. in accordance with the terms stated by them in the orignal orders."

In November, 1890, Wight & Co., of the city of New York, were indebted to the plaintiff in a considerable sum, and in that month they became embarrassed and unable to pay their debts in full. November 8, 1890, H. L. Fesler & Co. cabled the plaintiff as follows :

" Have private information ; Wight & Co. failing ; very soon. Shall I act ?      FESLER."

The plaintiff replied by cable :

" FESLER & Co. :      NOTTINGHAM, *Nov. 8th,* 1890.

"Act promptly, Wight & Co. Can you obtain goods ? Remittances required. Will write you full particulars; will power of attorney be required ? Reply immediately by code edition."

On the same day Fesler replied by cable as follows :

" Impossible to determine without knowing the amount; power of attorney will not be required.      FESLER."

The plaintiff replied :

" FESLER, New York :                         *Nov.* 11, 1890.

" £1,087 ; have omitted the interest in the account.   $5,768.82."

Thereupon, a suit to recover the amount was begun at the instigation of H. L. Fesler & Co.

On the 11th of November, 1890, the plaintiff executed and delivered the following power of attorney to Fritz Reinhold, of Nottingham, England :

" TO ALL TO WHOM THESE PRESENTS SHALL COME :

" We, John Henry Jacoby and Arthur Joynes Butler, Directors of M. Jacoby & Co., Limited, Nottingham, England, Lace Manufacturers and Merchants, GREETING :

" Whereas, we, the aforesaid John Henry Jacoby and Arthur Joynes Butler, having reason to believe that several firms in New York, in the United States of America, are not in a position to meet their indebtedness to the firm of M. Jacoby & Co., Limited, desire to give a general power of attorney to Fritz Reinhold to act for them in such manner as he, in his discretion, may think the circumstances of each case may require, and to adjust any claims or differences in account that may arise with these New York firms.

" Now these presents witness that the said John Henry Jacoby and Arthur Joynes Butler do hereby make, ordain, constitute and appoint Fritz Reinhold, of Nottingham, in the United Kingdom of Great Britain and Ireland, their true and lawful attorney and agent for them and in their name or otherwise, and on their behalf to ask, demand, receive and recover all and every sum or sums of money whatsoever that are or is now due and owing to the said company ; of and on our behalf to investigate, adjust, settle and to compromise all accounts, debts, claims, disputes and matters which are, shall or may subsist or arise, and also, if necessary, to commence and prosecute and defend all actions, suits, claims, demands and proceedings touching the premises, and in any way connected therewith, and also to receive and give effectual receipts and discharges for all sums of money, claims or demands by the said company, and to prove and receive dividends, and to give receipts for the proceeds arising from all, also to give effectual receipts in full discharge of all claims, and

generally to do, perform and execute all and every such act and acts, duty and duties in and about the premises as he, the said Fritz Reinhold, shall think proper, as fully and as effectually to all intents and purposes whatsoever as the said John Henry Jacoby and Arthur Joynes Butler might or could do if personally present, and also to substitute and appoint any person or persons to act under, or in the place of the said Fritz Reinhold in all or any of the matters aforesaid, and every such substitution at pleasure to revoke, the said John Henry Jacoby and Arthur Joynes Butler hereby agreeing to ratify, confirm whatsoever the said Fritz Reinhold or his substitute or substitutes shall lawfully do or cause to be done in or about the premises by virtue of these presents.

" In witness whereof the said John Henry Jacoby and Arthur Joynes Butler have hereunto set their hands and seals, and also affixed the common seal of the said company, the 11th day of November, in the year of our Lord, 1890.

" For M. JACOBY & CO., LTD.

" John Henry Jacoby,

*" Director.*

" For M. JACOBY & CO., LTD.

" Arthur Joynes Butler,

*" Director.*

" Signed, sealed and delivered in the presence of

" Geo. Richards,

" J. H. Warner."

On the 19th of November, 1890, Fritz Reinhold arrived in New York, bringing with him his power of attorney. On the next day he indorsed the following substitution on the power, which he delivered to H. L. Fesler:

" I herewith transfer this power of attorney to Mr. H. L. Fesler, of 464 Broome st., New York.        FRITZ REINHOLD.

" *Nov.* 20, 1890.

" [Seal of M. Jacoby & Co., Ltd.]"

On the twentieth of November Mr. Fesler called on Wight & Co., taking with him the power of attorney and the substitution, and on that day effected a settlement of the plaintiff's claim against the firm, and received the above-mentioned check in payment, and at the

same time receipted the bills.   H. L. Fesler thereupon indorsed the check, " M. Jacoby & Co.," and delivered the same to Elisha J. Dennison, defendants' testator, for the purpose of paying the indebtedness of Fesler to said testator of $1,050, and of receiving a check of Dennison's for the balance, $3,589.27, payable to the order of H. L. Fesler & Co.   The check given by Fesler to Dennison was paid the next day after it was given, and Dennison's check to Fesler was duly paid on presentation.

Upon the trial requests for the direction of verdicts were made, but the court submitted the question to the jury whether or not in advancing this money Mr. Dennison, the defendants' testator, relied upon an apparent authority and acted in good faith.

*John J. Adams*, for the appellant.

*Lawrence Godkin*, for the respondents.

VAN BRUNT, P. J.:

The submission of this question to the jury was duly excepted to, and the question presented upon this appeal ʼis whether upon the conceded facts there was anything to go to the jury upon any such issue.

In the determination of this appeal it is not necessary to pass upon the question as to whether an agent entitled to collect moneys on behalf of his principal has authority to indorse for purposes of collection such commercial paper as may come into his possession as such agent. . It is undoubtedly the established rule that such agent has no authority to make an indorsement which imposes any liability upon his principal.   This seems to have been the rule which pervaded the cases cited in the case of *Holtsinger* v. *National Corn Exchange Bank* (1 Sweeny, 64).   We find in each of the authorities cited to sustain the conclusion of the court that there was a negotiation of bills received by the agent and indorsed in the name of the principal by the agent, thereby creating an obligation upon the part of the principal to pay in case of a failure upon the part of the makers of the paper to provide for its payment.   It has not, however, been authoritatively determined that where an agent receives commercial paper in the course of the collection which he is authorized to make for his principal, he may not indorse such paper for

the purpose of collection, and for the purpose of collection only, it being suggested that such an indorsement is not creating any liability in the name of his principal, but is simply the gathering in of the money which the agent is authorized to receive and remit to his principal.

In the case at bar, however, this feature in respect to the indorsement seems to have been absent. Although the question as to Dennison's good faith was submitted to the jury, and seems to have been resolved in his favor, the conceded facts of the case show that he received this check belonging to the plaintiffs, indorsed in their name by their agent, for the purpose at least of partially paying the agent's debt to him. He, therefore, knew at the time that this check was received bearing this indorsement, that in paying his individual debts with that check the agent was not acting in his master's business. It was apparent that the agent was not acting within his authority. There was nothing in the relations between the principal and the agent which authorized the agent to apply his principal's money towards the liquidation of his own debt. And as has already been suggested, when Dennison received this check, indorsed as it was by the agent, he knew that the agent was violating his authority, because at best he only had the right to receive the money for the purpose of transmission to his principal.

It is true that there was some attempt upon the trial to show that there was some indebtedness from the principal to the agent on account of commissions. But no definite evidence in that regard was given. There was no proof that any of this money was due to this agent on account of commissions. There was some pretense that some commissions were due, but that certainly is not sufficient to justify an appropriation to his own use of a principal's money by an agent; and a party who aids an agent in a scheme of that description cannot be said to be acting in good faith. Therefore, as matter of law, it would appear that Dennison did not receive this check in good faith, as he knew that the agent was misapplying at least a portion of the proceeds. This misapplication to the knowledge of the party advancing the money, or rather the balance of the money, necessarily tainted the whole transaction and charged him with knowledge that the agent in making the indorsement was not acting on behalf of his principal.

Under such circumstances it would seem that there was no ques-
tion for the jury, there being no dispute in regard to the facts, and
that Dennison, as matter of law, could not be held to have accepted
the check in good faith relying upon an apparent authority.

The judgment and order should be reversed and a new trial
granted, with costs to the appellant to abide the event.

FOLLETT and PARKER, JJ., concurred.

Judgment and order reversed, new trial granted, costs to appel-
lant to abide event.